Mr. Severson, when you're ready. Thank you, Chief Judge Gregory. May it please the court. Daniel Severson for Emmanuel Shaw's court-assigned counsel. In this case, defendants repeated unjustified refusals to review the video evidence violated Shaw's rights. The dismissal order should be reversed for two reasons. First, Shaw stated a due process claim that defendants sent him to a Supermax prison after they arbitrarily refused to review exculpatory evidence. Instead, they chastised him for requesting the video, offered no reason for refusing to consider it, and convicted him for touching his own body in the shower solely based on a prison guard's say-so. Second, the record shows that defendants refused to review the video in retaliation for Shaw's grievances that culminated in a letter to officials outside the prison. Prison walls do not separate prisoners from the protections of the Constitution. Shaw's claims should be reinstated so that he can Thank you, Judge Wynn. I think the court must reinstate Shaw's due process claim. The unjustified refusal to review exculpatory evidence at a hearing leading to transfer to Supermax violates due interest. You're in isolation temporarily. That's not going to do it. The case law is pretty clear. That's not going to do it. But it seems that the Supermax could do it. There's case law that the Supreme Court, I guess, that deals with that aspect of it. So address that in terms of the liberty interest. That's correct. I think the liberty interest, a prisoner does have a liberty interest in not facing an erroneous transfer to a Supermax prison, which the Supreme Court explained in Wilkinson v. Austin would be atypical or harsh compared to any baseline. And particularly at the pleading stage, where there haven't been any discovery or any response to the claim, the Shaw should be allowed to develop facts and arguments to support that claim. And I think the best authority for that is Haynes v. Kerner, Supreme Court's decision, where it says that the allegations from a prisoner plaintiff leading up to a disciplinary charge and then confinement and segregation, even if inartfully pled, are sufficient to allow for further development. I want to direct the court to AA185, which I think is very telling. It's the disciplinary offense report. I would really like for you to go back to your allegations, because that seems to be going to be the treatment point here, is whether you allege sufficiently pleadings that would encompass this Supermax facility. Clearly the isolation in the temporary facilities there, the segregated confinement is there. But we probably can acknowledge, you are probably not going to get very far with that alone. But the Supermax can get you there. The question is, do your allegations fairly and broadly encompass an allegation that would include the Supermax facility? Yes, I think if you look at JA211, Shaw alleged, the guilty verdict against me resulted in my immediate transfer to Red Onion State Prison, which is arguably one of the harshest prisons in the country. He also alleged that the very purpose of refusing to review the video and convict him was to send him to And I think that's sufficient at the pleading stage, particularly for a pro se prisoner. If you look to this court's decision in Martin, the court has a... Where does the liberty interest come from? That's what I'm looking for in terms of the allegation. The liberty interest can be state created, and it can come... Where is the allegation in that complaint? Well, he cites two portions of the Virginia Department of Corrections policy, and there... A pro se complaint is what you're basically... This is a pro se complaint, yes, and you can look to that as part of the pleadings. And it does say that a hearing is a due process proceeding. But did it come from the policies of the Department of Corrections? It seems like we need to find a state regulation, a policy somewhere to find that interest. Well, this is an operating procedure that would have been issued, I think, under certain regulations. It has... If you look at the operating procedure at the first page, it has the specific state regulatory authority. But the disciplinary hearing is a due process. It says on page two, the disciplinary hearing is an order to be able to be convicted of the offense. On page 13, it says that once you have a second conviction for offense, that's what makes you eligible for review for a possible security level increase. So I think... I don't know exactly what your opponent's going to argue, but I suspect he's going to say there was a My question is, how do you avoid the effect of that? And can it be avoided by the fact that the trial judge knew of these disputed facts about the video? The Roseboro Notice doesn't affect the analysis for the due process claim because that was dismissed at the pleading stage. And so I think there's no question that that should be reversed and reinstated. And there's a state-created liberty interest as recognized by the Supreme Court and the authority I cited in the briefs. It should be allowed to be further developed. In terms of the Roseboro Notice, Judge Floyd, I think that goes to the retaliation claim that was allowed to proceed and the Roseboro Notice was given with the defendant's answer and motion for summary judgment. I'm not disputing that they provided a Roseboro Notice and that Shaw had the additional materials, but he never had the opportunity to take discovery as to sufficient retaliatory intent. But on that point, I do think there is sufficient evidence in the record to preclude summary judgment as to the First Amendment retaliation claim. And the reason is that there's no question that... So Shaw needed to establish two things to establish a substantial or motivating factor, or that his protected conduct was a substantial or motivating factor in the defendant's adverse action, which would be the refusal to review the video and send it to Supermax. And to establish that, he needed to show that they knew about the protected conduct and that there was close proximity and timing. And there's no dispute that there's close proximity and timing here. It was just mere days between writing his letter to officials outside the prison on August 9th and then the conviction on August 17th. And in the interim, he wrote several other correspondence to officials. He wrote, on August 10th, he wrote an informal complaint, which Unit Manager Murphy reviewed, that says he's already written to Richmond already, but he's trying to give officials in the prison a fair chance to respond. And Unit Manager Murphy would have received that before. He received that on August 21st and conducted the institutional class review on August 22nd that led to recommending Shaw to be transferred to Red Onion. So I think those are... The timing is there. There's knowledge, because he alleged that the prison officials were opening bulk mail, and he provided contemporaneous evidence of that in the form of his August 15th and August 16th letters. Is timing enough on a summary judgment to show causation? It's timing and knowledge, and you can establish knowledge through circumstantial evidence. Defendants did not dispute, didn't deny that they were aware that they were opening bulk mail or that they were aware of his correspondence. And so I think under the Martin v. Duffy same decision test, Shaw has established that it's a substantial motivating factor, and the burden now shifts to defendants to say that they would have taken the same action anyway. But again, they have offered no just... He was already in segregation when he got that letter, wasn't he? He was in segregation when he wrote the letter, but the letter prompted the defendants... They don't say that they would have still refused to review the video without the letter. It's the letter that prompted the defective nature of the hearing. And in fact, it's after August 4th that there's no hearings rescheduled, the 15-day time period within which to indefinitely prolong. This is what he actually wrote his letter to Karen Stapleton on August 9th, complaining that prison officials were manipulating the operating procedure to do exactly that. He exercised his First Amendment right to complain about that, and instead, within days, they convict him at a procedurally compromised hearing. Well, let me ask you this. Did the defendants plea qualified immunity as to the procedural due process claim? They did not, because they didn't have an opportunity to do so. The procedural due process claim was dismissed sui sponte by the court, and then defendants were instructed to answer as to the retaliation claim. So what are we supposed to do with that? Because, like Judge Wynn, the procedural due process claim, it looks like he erred, but at the end of the day, it's going to be a qualified immunity defense, I think. No, I don't think there will be qualified immunity at the end of the day, but the court can remand for the district court to consider that issue in the first instance. The reason why it's not qualified immunity is Lanier, which recognized or confirmed these rights in 2019, was based, undergirded by existing and controlling Supreme Court and Fourth Circuit law. In Wolfe, the Supreme Court held that a prisoner has, in a disciplinary hearing, has a right to present evidence in his defense. A prisoner also has to be given a reason for the denial of the refusal to consider the evidence. That's the Supreme Court's decision in Ponte v. Real, and the Fourth Circuit has held that documentary evidence includes video. So you take those three decisions together, it's clearly established that the refusal here to review the video was a denial of due process. In addition, there's... Lanier postdated these events. That's right, but the language of Lanier says it, quote, reflected existing and controlling Supreme Court and Fourth Circuit law. So the law was clearly established even before 2019. I don't think it's a stretch to say that those principles which were articulated in... Lanier, in a sense, has said it's clearly established. Lanier confirms the right that was preexisting, and it was also decided based on, quote, a universal consensus of persuasive authority. And defendants don't just... That case uses language like this. It says, for the first time in this circuit, the presidents have a right to present video evidence. How is that clearly established? That's right, but the clearly established... That means those words meant nothing for the first time in this circuit. It doesn't mean that it means nothing. The Fourth Circuit specifically adjudicated those rights for the first time. But to be clearly established, you don't have to have a right that's specifically adjudicated. It can be manifest in the constitutional principles. It can be, as Chief Judge Gregory, you acknowledged, in the Booker decision. It can be reflected in a consensus of persuasive authority. I wish that law was as clearly established as you were saying it. I mean, we know from the Supreme Court that that whole principle of clearly established is really up in the air right now in the circuit, and we're looking in the Fourth Circuit here. I think when we say, for the first time in this circuit, we're not talking about first-time adjudication. That's kind of what it has to be. It has to be, at least now, could one day be, if certain justices get their way, it may just have to come from the Supreme Court. Right now, if a circuit has it in there, we've made it clear in that case that it is now. But to use that case to say it already existed might stretch it a bit. I think Lanier is shorthand for the existing body of controlling law that preexisted and was merely confirmed because it was presented in a contested case where there were two litigants who were fighting over that adjudication of that right. On qualified immunity, Judge Floyd, I suggest that your decision in Williams v. Strickland is very instructive because there, I think you said that we can expect officers to draw logical inferences, reason from analogy, and exercise common sense. And if X is illegal, then Y is also illegal. Here, there's no dispute that under the Supreme Court and Fourth Circuit law, or under the Supreme Court law, documentary evidence has to be provided and you have to provide a reason for denying it. The only wrinkle is video evidence. And I think, so if you say it's illegal to refuse consideration of written testimony, then it's illegal to refuse consideration of video testimony. A picture is worth a thousand words. Yes, I think it could go to disputing the credibility of the prison guard's version of events, which again, if you look at JA 185, it says this is the reason for the decision of the conviction. And the hearings officer says that the reporting officer stated that she was, quote, for certain that this was the offender. And then it goes on to say the offender did not have enough evidence to support his defense, but he requested the video repeatedly over weeks to multiple officials in different informal complaints. He went on a hunger strike. He raised this issue repeatedly, and yet they refused to consider it and offered no justification. Even in the administrative record, in the district court, and even now on appeal, they have offered no valid penological justification. I see that my time is up, and I'd like to reserve the remainder for rebuttal unless the court has questions. Well, you have reserved. Thank you. Thank you, Chief Judge Gregory. Good morning, Your Honors. May it please the court. I'm Lucas Croslow here for the appellees. With me at the council table is Jordan Mnott, Assistant Solicitor General. I'd like to note at the outset that a lot of what you just heard from my friend on the other side, like a lot of what's in Mr. Shaw's briefs, is nowhere to be found in his numerous papers submitted to the district court. Excuse me. Mr. Shaw filed a complaint. He then filed a clarified and particularized complaint. He filed two letters further clarifying his second complaint. Is it okay if you want to take that mask off?  Thank you, Your Honor. That's much better. Thank you. And despite all of these papers filed with the district court, many of the claims that have been asserted here on appeal simply weren't asserted below and are clearly waived. I think two examples are especially glaring, and I'd like to highlight them here. First, Mr. Shaw never argued below that there was a deprivation of due process in connection with the failure to review video evidence. The failure to review video evidence, in Mr. Shaw's view, up until he was here on appeal, was retaliatory on the part of prison officials. It was not a deprivation of due process. In fact, Mr. Shaw expressly disclaimed any due process claim against hearing officer Lebo. That's at JA-71, which is Mr. Shaw's amended complaint. And it was hearing officer Lebo that conducted the hearing and found Mr. Shaw guilty. So any due process claim relating to the conduct of the hearing, and in particular with regard to the failure to review video evidence at the hearing, is not only not clearly stated in the complaint, but even expressly disclaimed by Mr. Shaw below and can't be advanced here for the first time on appeal. Also, you're talking about a pro se litigant, and wouldn't it follow that if you're saying you retaliated about this video that he's claiming that there's something favorable to him, why they don't want it disclosed? Why wouldn't that follow in terms of logic and common sense? Well, Chief Judge Gregory, I don't know that there's any allegation that anyone reviewed the video, so I don't think we can necessarily infer that. No, the point was that he hadn't seen it either, but he was there. And he said if the video is what it purports to be, an accurate depiction of what happened, I know what did not happen, therefore the video should establish that I didn't do what I'm charged with. I mean, that's putting a high burden on a pro se to say, well, he said it, but he didn't get the Simon Says, you know, the lexicon of legal lexicon. But it's clear he's saying that that video is important because the video will tell the truth, and we can get to the truth, and that's what he's saying. I think, Your Honor, it is clear that Mr. Shaw repeatedly said that the video might be exculpatory. I think it's clear that he considered the video important. I don't, frankly, know why Mr. Shaw did not choose to make a procedural due process claim based on the lack of review of video evidence. I just know that it's quite clear from the record that he did not do so. And I think that fairness— Did he request a video in the record? I'm sorry, Your Honor? Was the record established that he requested the video? Well, I don't know, actually, Your Honor, whether it's perfectly clear that he requested review of the video at the hearing itself. I know that he did request from numerous prison officials, including some of the named defendants, that they review the video evidence, and they refused to do so. Why would they do that? I don't know, Your Honor. I frankly don't know the answer to that question. You come here saying we should rule in your favor, and you don't know a key question. So you can't say it wasn't important, can you? No, Your Honor, I can't necessarily say that. And you can't say that it wasn't exculpatory, can you? I cannot, Your Honor. But you're saying that he didn't put the right pegs in the right hole because, as the pros say, he didn't articulate the legal standard, right? Well, respectfully, Your Honor, I actually think it's a little more than that because I think this is not a case like one of the cases mentioned by my friend where there's ambiguity in the complaint or where the complaint is inartfully pleaded. This is a case where the complaint is actually quite clear, and the clarifying letters submitted to the court by Mr. Shaw are quite clear. And there's an express disclaimer of any due process claim against the hearing officer. And again, Your Honor, I don't know why Mr. Shaw didn't choose to bring any due process claim against the hearing officer, but it is quite clear that he did not. And to allow him on appeal to revivify his due process complaint, not only in general but against a particular defendant that he never brought a due process complaint against before, and allow him to advance an entirely new theory based on the facts that he's pleaded, I think goes a good deal beyond, you know, deference to pro se litigants. I think it's, you know, creates a real notice problem to defendants who are trying to defend against complaints like this. And I think it would be to fault the district court for something the district court was not reasonable. The matter that he repeatedly asked the officials to view this evidence, he's got letters all over the place. I mean, there is the, I guess, in terms of, well, they didn't know about it for the first time, in terms of maybe a pro se litigant didn't put it specifically in the complaint. But they've got letters all over the place where he's trying his best to get this video evidence. He's going complaints and all kinds of stuff flying around. It's clear to them he wants it. Maybe it's a lawyer and judge's question is whether, well, if he didn't put it in the complaint, they didn't know anything about it. I agree, Judge Wayne. It's clear he wanted the video, and he certainly said so to several prison officials. That's the thing. But let's, okay, we probably can, we will have to decide that issue if, if, if, and I won't say if, we assume he did plead it, then we get to the merits of this thing. And then the question is, did he allege a sufficient liberty interest here? And he says he alleged a boarding being placed into a super max facility. If we get there, isn't that sufficient to establish a liberty interest? If it were the case, Your Honor, that he had alleged that he, he was. And then we will assume. If we were to make all those assumptions. Then we're going to talk about the merits of the case. Yes, Your Honor. If we were to make those assumptions, then we, I would agree that there's a liberty interest. I think it's clear there's a liberty interest in not being placed in a super max facility erroneously. I don't agree, and I don't think it'll be a surprise to you that I don't agree that that's, that theory was adequately pleaded below. And in fact, the reference that my friend made to the joint appendix at page 211, that's Mr. Shaw's summary judgment opposition. That was not an argument, again, that Mr. Shaw was making with regard to his due process claim or with regard to a liberty interest in not being transferred to a super max facility. That was an argument Mr. Shaw was making in connection with his retaliation claim when he opposed the defendant's motion for summary judgment. So this is another theory that I do not think was adequately pleaded below. And I don't think that either the district court or the defendants could have been expected to understand that Mr. Shaw was attempting to advance a due process claim where the asserted liberty interest was not being transferred to a super max facility. The district court. Was he entitled to counsel on this matter here? I don't think he was entitled to counsel per se in the disciplinary hearing. I know he was entitled to have some sort of a person with him of his choosing from the prison staff. The complaint itself, is there anything that would say he would be entitled to a counsel? In the district court, Your Honor? Yeah. Not that I'm aware of. I mean, it's certainly within the district court's discretion to appoint counsel. When did he become entitled in this process to a counsel? It's not clear to me, Your Honor, that he is entitled to counsel. This court obviously chose to make that appointment in its discretion, and the district court could as well. When could he have been appointed one in the process, if you know? I'm sorry, Your Honor? When could he have been appointed one in the process, even in the discretion of the court? I honestly, Your Honor, don't know the answer to that standing here. I would imagine the district court could have done it as soon as it received the complaint, but I'm not certain. It would seem as though, you know, if you're going to hold a pro se litigant to the standards of a lawyer, and then after the complaint comes in, you then appoint a lawyer, you wouldn't approach that complaint as though a lawyer drafted it, unless you want to appoint a lawyer before the complaint. Maybe you would draft one and submit it to a lawyer, and then the lawyer would put it in. But it seems to me, I heard this earlier in an argument this week, so you're the beneficiary of me getting it. But one of the counsels argued, well, maybe you should be getting a lawyer quicker in the process. I hadn't really thought about that, but there seems to be some disconnect here. And I agree, when you're dealing with pro se, sometimes you're better off being pro se than a lawyer, because you can get the benefit of stuff that a lawyer doesn't do, you won't get. If a lawyer has, you have a lawyer, but if you're pro se, you might. But this is one of those instances where he's got letters all over the place, you know, making this point. And then he does this complaint, it's inartful, and maybe the brief might be inartful, it doesn't quite go there either. But the question that comes to us, you know, you're saying procedurally this thing is defective, but if we get to the merits of it, that a potential liberty interest then exists. That presents a conundrum for us, and we've had cases all over the board dealing with these pro se type issues, and maybe one day that has to be dealt with, is are there different rules that apply. And clearly there are, because there are instances where pro se complaints are viewed broader than if you as a lawyer drafted them, because there's a little bit of liability attached to them if you fail to do it like you're supposed to, but if there's no lawyer, there's not. What do we do with, you know, we have a linear decision decided, but after that, Tyler versus Hooks was decided, and it said the court expressed to Hill the right was not clearly established prior to Lanier as to the video evidence. And Lanier is after this incident, right? Yes, Your Honor, that's right. Yes, and I certainly agree. I think it's quite clear from both, from Tyler and from Lanier, that this was a newly established principle in the Fourth Circuit, that prisoners are entitled to the review of video evidence. My friend on the other side cites what he calls a persuasive consensus, but the standard is that the persuasive consensus has to put the issue beyond debate, and I don't think there's anything to suggest that this question was not still debatable in the Fourth Circuit up until Lanier was decided. And so because Lanier postdates this case by the relevant events in this case by several years, I think there's no real argument that there was a clearly established right at the time. So you say there's no way to get around Tyler versus Hooks? Agreed, Your Honor, and Lanier itself, which of course says it's deciding the question for the first time in this circuit. Yes, so I mean, my friend on the other side in his briefs has said that the way around Tyler is that it was an AEDPA case, and Tyler does mention that the answer in Tyler was all the more clear, because it was specifically Supreme Court precedent that was relevant to the decision. But that's only a buttressing point in Tyler. Tyler does quite clearly say that the right was first clearly established in Lanier, and I think that that's clear in Lanier itself as well. But the AEDPA of Tyler can be a different type of case. It wasn't really a qualified immunity case. It dealt with a depth of type action in which Supreme Court has already said that has to be clearly established under federal law as determined by the Supreme Court. Totally different case than what we're dealing here. I mean, the point you make in terms of the missing first time on the circuit, that's pretty good stuff. But I don't think Tyler's getting you there. I agree, Your Honor. Tyler itself may not get there because of the distinction that you've noted, but I think between Lanier itself saying it's establishing this right for the first time and then Tyler reinforcing the point, I don't think that it could really plausibly be argued that this question was put beyond debate until Lanier itself was decided. So there's certainly a qualified immunity defense. If the case were to be remanded and the due process claim revived, there would be a qualified immunity defense based on the fact that the officers could not have been reasonably on notice of an obligation to review the video evidence. I do want to touch briefly, Your Honors, on the retaliation claim and the causation issue that Your Honors noted in my friend's argument. Now, let's be clear. What were we just talking about right then with regard to qualified immunity? Was that the retaliation claim? Well, I think it goes to both, Your Honor, but Lanier itself was in the context of a due process claim. That's the First Amendment retaliation claim. I thought you were talking about qualified immunity regarding the retaliation claim. From that perspective, on the procedural due process claim, we're dealing with a whole different type of issue. So that's why you're confusing me. You closed off as though now we're going to talk about retaliation. I thought we just finished talking about it, or didn't we? Well, Your Honor, we've been talking about both in a sense, precisely because the issue is... But the qualified immunity is going to that retaliation claim, or is it not? I think it goes to both, Your Honor, because there would clearly also be qualified immunity as to the due process claim. It is true that the defendants did not have an opportunity to file an answer to a complaint that included the due process claim because that claim was dismissed by the district court suspente before defendants filed their answer. But I'm happy to represent that there be a qualified immunity defense pressed by the defendants as to both claims on remand. And it, I think, would be equally persuasive as to both claims. But I was pivoting in the sense that I want to make sure we cover the causation issue, which we've not yet spoken about, which is that Martin v. Duffy certainly did establish a new legal standard for causation, at least in what it called dual cause cases or dual motive cases. But that new standard did not actually make a difference as to this case, which, of course, was decided by the district judge without the benefit of Martin v. Duffy. And the reason it doesn't make a difference is because, well, for two reasons. First, Martin still requires the plaintiff to make a prima facie case of retaliation, which because there's simply no evidence to support causation here, Mr. Shaw failed to do. And the second reason is that there's only a difference between but-for causation and the same decision test that's put forward in Martin v. Duffy if you're dealing with a dual motive case. And here we're simply not. The dispute here is not over which of two causes was the reason for the allegedly retaliatory acts. The dispute here is whether the protected First Amendment activity had any causal connection whatsoever to the prison officials' actions. And the answer is no, because there's no evidence in the record that prison officials actually even knew about the protected First Amendment conduct. And I want to address that in kind of two tranches. The first tranche is with regard to the protected First Amendment conduct that Mr. Shaw was actually talking about in the district court. And that's his two letters to Ms. Karen Stapleton, who's a VDOC official here in Richmond. Mr. Shaw asserted that he was being retaliated against by prison officials because they became aware that he was writing to Ms. Stapleton about what was going on at Sussex 1 State Prison. All we know from the record is that at most, one prison official eventually became aware that Mr. Shaw had written to Richmond. And that's by virtue of the August 10th informal complaint that Mr. Shaw filed that was routed to Mr. Murphy, Defendant Murphy. But Mr. Murphy did not definitively see that informal complaint until August 23rd, which is not only after the disciplinary hearing took place. It's also after Mr. Murphy made the recommendation to transfer Mr. Shaw to Red Onion State Prison. The August 21st date that my friend referred to is the date that that informal complaint was stamped received. We don't know received by whom, but it's not, I think, fair to infer that it was received by Mr. Murphy. It was received by some prison official and then assigned to Mr. Murphy, who signed that he had seen it as of August 23rd. Which way are these inferences to be drawn in his favor of the prison? Well, Your Honor, I would note, first of all, that there's actually no evidence in the record that was put there by Mr. Shaw. He didn't submit any affidavits or declarations, and he didn't verify his complaint. Was he given notice that he could have discovery? He was given notice in two orders of the district court, Your Honor, that if the defendants were to move for summary judgment, that Mr. Shaw would have the opportunity to submit affidavits, counter-affidavits, declarations, and that he could request additional time to gather more materials, which he did not do. That's not discovery, notice of discovery. Notice that I can submit something that I have already discovered is to discover. That's what the word means, what it says. I need to discover what I know I have. The question is, he was not told that he had an opportunity of discovery. I don't know, Your Honor, whether it was ever expressly communicated to him. It was not. The record clearly shows that. But that's my question is, to whom should the inferences favor, you or Mr. Shaw? You never answered that first question.  You don't like the answer? The answer is Mr. Shaw, isn't it? Let's deal with the facts and the law first, and then you can explain why you think I should eschew that law and then ruin your favor. But he wasn't told that, was he? Well, I'm certainly not recommending, Your Honor, eschew any law. And I think that it's certainly the legal standard is that all the facts have to be construed in favor of the nonmovement. But the best who received it and most who got it on this date, those are all inferences in your drawings in your favor. I just would listen to your colloquy about that. Well, maybe how do we know that he got it? Maybe he didn't. How do you know? Well, it was there. It was in the milieu of where his job is in terms of the Department of Correction. Right, correct? Yes, Your Honor. So we sit here, you want us to just whisk away all these facts in your favor in a pro se case, where in this case he didn't look at the video, which I just don't understand that. You know, a place that's, I don't know, you've got people there who are serving time, probably so, for breaking the law because something about truth they didn't honor. But if you have a video, then why wouldn't you? I mean, maybe I'm just old school. I mean, just the way I grew up in, you know, down in Petersburg, a little smaller town. But my parents taught me a lot about common sense and fairness. I mean, if you're charging somebody that eventually led him to go to Red Onion, why wouldn't you say, look at it? Why? I mean, it's just, I don't understand. Are we bereft of common sense anymore? Why? I mean, I just, why? Why is that a prison? Why did someone have to tell you that, you know, wait for a case to see whether or not that's appropriate? What about wait for the fact of what humanity is? Injustice. Can you answer that for me? You represent him. Do you know? If you don't know, that's fine. But I just don't understand why not? And it shows that he did it. You should be great. Maybe this case would come. Look, that's you right there doing exactly what you did. But when he's saying I didn't do it, look at the video that you have. Didn't you have it? As far as I know, your honor, I do see that my time is expired. That's why you find the chief. I'm asking you questions. As far as I know, the video was was in the prison system. There's nothing to suggest otherwise. Right. They had it all the time and they still have it. Right. I don't actually know the answer to that for certain, but I don't know that they don't. Well, certainly they wouldn't destroy it. I wouldn't think so, your honor. No, I wouldn't either. So they have it. And when we spend all this time with all the court and all those things, when you have just something simple, just make you wonder where we've gone in society now. I mean, why not? I don't know the answer, your honor. I'm afraid it's simply not in the record. OK, well, if I disturb your last moment, so you can go ahead and take a minute or so. No, that's quite all right, your honor. I think the two points I'd like to emphasize in conclusion are simply that many of the theories that have been advanced here on appeal, as your honors can tell from the record, were not advanced in the district court. I certainly recognize the conundrum Judge Wynn referred to, and I recognize the need to show special solicitude to pro se litigants. But I think it would be a bridge farther than this court's been willing to go in the past to look even at the facts that were pled here and to suggest that the district court should have derived legal theories from them that Mr. Shaw expressly disclaimed below. So that's my first point. And my second point is simply that even if we even if the court were to evaluate these waived arguments on appeal, they still fail. And on remand, there would still be a very weighty qualified immunity defense as to both claims. So we would urge the court to affirm. Thank you. Thank you so much. Thank you, your honor. A few points on the issue of waiver. They address this at the reply brief at page 16. The disclaimer against Labo was made in the contents context of the due process claim about being continued in segregation. But that doesn't discount from the fact that the thrust of the complaint is that he is continually upset that the defendants have refused to review the video. And indeed, he said hearings officer Labo is personally involved because she conducted an untimely, invalid disciplinary hearing for the purpose of finding me guilty of a disciplinary offense that I was wrongly accused of committing and then transferring me. And that's a J 75, 76. Also, I think one of the questions was, does the record make it clear that he requested the video at the hearing? Yes. If you look at J 25, he says, instead of looking at the video evidence, Labo chastised me for wanting to rely on the video evidence. Correct. Yeah. And then also, I think there was a question about whether he alleged a sufficient liberty interest and colleagues said that the reference that was made was in the opposite of summary judgment. I think you can consider the whole record here on appeal. But you look at J 48 and 51. He alleges his initial complaint that he was being transferred to the most restrictive prison in Virginia. So I think that suffices. And they concede that there is a protected liberty interest in erroneous transfer to supermax prison. I think that warrants reinstatement of the claim as to I think Chief Judge Gregory, you made the valid point that he shouldn't be penalized for trying to put the right, And the court's decision in Starbuck is instructive where there there was a pro se plaintiff and he raised a new theory, legal theory on appeal. And the court said, well, we'll look to the facts that were alleged in the complaint. And here the complaint and record is suffused with allegations about failure to review the video as to qualified immunity. I think the court can could reach that decision and hold that it was clearly established. I don't think that the phrase first time in the Fourth Circuit necessarily means that it was only clearly established at that time, because the law that that Lanier was relying on was reflected existing and controlling Supreme Court and Fourth Circuit law and was based on, quote, universal sister circuit authority. That's a consensus of persuasive cases and another way to find qualified immunity. But if there's any doubt, the court can remand and have the district court address that in the first instance. Indeed, the appellees in their brief at page 50 cited Kate's from the Third Circuit Burns that said it was inappropriate to consider qualified immunity at the appellate stage when the district court had addressed it. I think, Judge, when you asked about when is it appropriate to have counsel appointed? I would just point out that a J.A. 70 he does. Mr. Shaw does say that legally I can't prove it without some help. So he's referring to his allegation against unit manager foreman's involvement. And I think it's clear from the pleadings that he's doing his best to articulate claims. And we shouldn't penalize him for making the best best efforts in terms of the right legal nomenclature. And the Fourth Circuit's decision in Gordon versus leak is clear that if the civil rights pro se plaintiff can't articulate the correct legal theory, then it would be appropriate to appoint counsel on on remand. So I think with all those points, unless the court has further questions, I'll rest on the briefs. Thank you. Thank you. Severson, I note that you are court assigned. I want to express on behalf of the Fourth Circuit and thank you for your service and other lawyers like you to take on these cases for indigent clients and represent them before the court. We rely upon that expertise and that assistance. And thank you. And also, Mr. Croslow, of course, of your able representation of your client as well. We can't come down and greet you as we'd like, but know that very well, very much that we appreciate your being here and wish you well and be safe. Thank you. Thank you, Your Honor.
judges: Roger L. Gregory, James Andrew Wynn, Henry F. Floyd